CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
SEP 28 2010
JULIA C. DUDLEY, CLERK
BY: 
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| QUINTON F. CROOM,<br>    Plaintiff, | ) <br> ) <br> ) | Civil Action No. 7:09-cv-00399 |
| v. | ) <br> ) | **MEMORANDUM OPINION** |
| OFFICER FULLEN,<br>    Defendant. | ) <br> ) <br> ) | By: Hon. Jackson L. Kiser<br>Senior United States District Judge |

Quinton F. Croom, a Virginia inmate proceeding pro se, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Croom alleges that the defendant, K-9 Correctional Officer Fullen, exercised excessive force against him. Fullen filed a motion for summary judgment, and plaintiff responded, making the matter ripe for disposition. After reviewing the record, I grant the defendant's motion for summary judgment.

I.

The record reveals the following facts. On March 31, 2009, Fullen responded to a call about two inmates fighting, one of which was plaintiff. Plaintiff was on top of the other inmate, and Fullen ordered both inmates to stop fighting and lay face down on the floor. Plaintiff eventually stood up "with both hands clenched by his sides[,]" but Fullen could not see whether plaintiff had a weapon in his hands. (Def.'s Aff. ¶ 4.) Fullen avers that, in his experience as a correctional officer, inmates often hide shanks or other weapons in their closed hands. Therefore, Fullen ordered his K-9 onto plaintiff, who fell to the ground. The K-9 bit plaintiff in his right upper calf, and plaintiff received immediate medical care for the dog bite. Plaintiff received follow-up medical care on April 3, 2009, including Motrin pills to sedate any pain.

Fullen provided video footage of these events with his motion for summary judgment. The video shows in pertinent part two inmates, one in a blue shirt, the plaintiff, and one in a

white shirt. Plaintiff is on top of the other inmate, presumably punching him or at least pinning him to the concrete floor. The first responders were two officers and one person in plain clothes. The plain-clothed officer unsuccessfully attempted to persuade the two inmates to separate while the two guards stood nearby. However, the correctional officers did not intervene between the fighting inmates. Fullen and his K-9 entered the pod less than thirty seconds after the first responders. Fullen and his K-9 were next to the two inmates, and Fullen restrained the K-9 by either its collar or the scruff of its neck. Despite the presence of the K-9 and the other officers, plaintiff was still on top of and restraining the other inmate.

As the K-9 approached the inmates, plaintiff stood up while in close proximity to Fullen, the K-9, and the other inmate, who still laid face-up on the floor. The camera that provided the best view then panned to the left and zoomed in on other inmate, who was then face down with his arms spread. Another camera showed Fullen and the K-9 holding their position for a second or two before approaching plaintiff, who was only several feet away. When the best camera panned back toward plaintiff after a couple of seconds, he was falling to the floor with the K-9 covering his lower body. Fullen held the K-9 by its leash and watched the K-9 and plaintiff, who was knocked down and sat on the floor. The K-9 was then over top of plaintiff until the he laid his back on the floor. The K-9's body still contacted with plaintiff's body until he turned over to lay face down on the floor, but the dog's mouth was clearly up and away from plaintiff's body. Plaintiff's right leg was away from the dog when he turned over. Fullen removed the dog and held it by the leash and collar or neck. Once plaintiff laid face down, Fullen and the K-9 walked away from him as other correctional officers secured him in restraints. Fullen and the K-9 stayed at least six feet away from the other officers as they picked him up and escorted him out of the

2

pod.

## II.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[1] Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky.

---

[1] The parties received reasonable and explicit notice that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk issued a timely Roseboro notice. See Fed. R. Civ. P. 12(d); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

The defendant argues that he is entitled to qualified immunity because the plaintiff fails to state a claim upon which relief may be granted. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Whether a defendant can claim qualified immunity is a pure question of law and is properly determined pretrial. Saucier v. Katz, 533 U.S. 194, 200-01 (2001), modified by Pearson v. Callahan, 129 S. Ct. 808 (Jan. 21, 2009) (permitting lower courts the discretion to determine which qualified immunity prong to analyze first).

4

Qualified immunity is an immunity from suit rather than a mere defense to liability. A plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993). However, a defendant must demonstrate that the right was not clearly established at the time of the incident to receive qualified immunity. Henry v. Purnell, 501 F.3d 374, 378 (4th Cir. 2007). Accordingly, in order to avoid summary judgment on the basis of qualified immunity, plaintiff must produce sufficient admissible evidence from which a jury could conclude that the defendants employed at least some force against him in a malicious or sadistic manner and that the violated constitutional right was clearly established at the time of the violation.

A convict alleging excessive force must objectively show that a defendant "inflicted unnecessary and wanton pain and suffering." Whitley v. Albers, 475 U.S. 312, 320 (1986). See Wilson v. Seiter, 501 U.S. 294, 298 (1991) (holding that an Eighth Amendment claim for excessive force requires an objective deprivation of a basic human need and that prison officials subjectively acted with a sufficiently culpable state of mind). The determination of the infliction of unnecessary and wanton pain and suffering turns on whether the force was applied "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21 (internal quotation marks omitted). In Whitley, the Supreme Court set forth four non-exclusive factors to assist courts in assessing whether an officer has acted maliciously and sadistically: (1) "the need for the application of force"; (2) the extent of any reasonably perceived threat that the application of force was intended to quell; (3) "the relationship between the need and the amount of force that was used"; and (4) "any efforts made to temper the severity of a forceful response." Id. at 321 (internal quotations omitted). See

5

Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175 (Feb. 22, 2010) (explaining core judicial inquiry is not the extent of the injury but the nature of the force – whether it was nontrivial and applied maliciously and sadistically to cause harm); Hudsonv. McMillian, 503 U.S. 1, 7 (1992) (extending the Whitley standard to all allegations of excessive force in violation of the Eighth Amendment).

In this case, a need existed for some use of force against the plaintiff. He had just finished fighting with one inmate and, instead of rolling off the inmate and onto the floor, plaintiff stood up and faced the officers. Plaintiff's failure to comply with the officer's orders to lay face down on the floor necessitated compelling his compliance. Fullen avers that he feared that plaintiff intended to act aggressively toward him or others, and plaintiff used his K-9 to have plaintiff lay face down so he would not be a threat to any one else. The K-9 rushed at plaintiff from a matter of several feet and brought plaintiff to the ground, during which it bit plaintiff's calf once. Once plaintiff was sitting on the ground, the dog stood over plaintiff without biting him. Fullen retrieved the dog once plaintiff complied with the officer's orders to lay face down on the floor. The K-9 tempers the severity of alternative uses of force that would likely include several men to wrestle plaintiff to the concrete floor. Instead of falling to a concrete floor with the extra weight of several men, the K-9 precipitated plaintiff's compliance to get on the ground under his own weight and without additional injury.

Plaintiff alleges he lost consciousness after sustaining head trauma during the fight and was disoriented, but the video does not indicate that he lost consciousness. Furthermore, the video contradicts plaintiff's assertion that Fullen ordered the K-9 to bite him while he passively laid on the ground; the K-9 rushed him while he was standing, and it was not on plaintiff when

6

he finally laid face down on the floor. Although plaintiff alleged that witnesses told him that Fuller said that he wanted to see if the K-9 would bite, he failed to include supporting affidavits. See Fed. R. Civ. P. 56(e); Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) (stating unauthenticated documents cannot be considered on a motion for summary judgment).

After considering the Whitley factors, the record, and all inferences in a light more favorable to plaintiff, the evidence does not support a reliable inference of wantonness, and thus, plaintiff fails to show that a defendant's conduct violated his constitutional right. The evidence does not support a reliable inference of wantonness because Fullen's use of force was plausibly a good-faith effort necessary to maintain or restore discipline and does not indicate an express intent to punish. Plaintiff stood up after beating another inmate and faced the officer, despite officers' orders to lay face-down on the floor. The K-9 quickly forced plaintiff's compliance, and Fullen withdrew the K-9. Therefore, Fullen is entitled to qualified immunity because the record indicates that "an alternative purpose to which [Fullen's act] may rationally be connected is assignable for it and the action[s] do[] not appear excessive in relation to the alternative purpose assigned." Robles v. Prince George's County, 302 F.3d 262, 269 (4th Cir. 2002) (internal quotation marks omitted). See Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) ("Qualified immunity protects law enforcement officers from 'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines.'"). Accordingly, the defendant is entitled to qualified immunity, and I must grant the defendant's motion for summary judgment.

III.

For the foregoing reasons, I grant the defendant's motion for summary judgment.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff.

**ENTER**: This 28th day of September, 2010.

/s/ Jackson L. Kiser
Senior United States District Judge